DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the September 25, 2006 judgment of the Lucas County Court of Common Pleas, which sentenced appellant, Christopher Stevenson, following his conviction of burglary, a violation of R.C.2911.12(A)(4). Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant asserts the following single assignment of error on appeal: *Page 2 
 {¶ 2} "Christopher Stevenson's conviction for burglary was against the manifest weight of the evidence."
 {¶ 3} A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. State v. Thompkins (1997), 78 Ohio St.3d 380,386-390. The standard for determining whether a conviction is against the manifest weight of the evidence is whether the appellate court finds that the trier of fact clearly "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Smith (1997), 80 Ohio St.3d 89, 114. In making this determination, the court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, and considers the credibility of witnesses. Id. and State v. Thompkins, supra at 387. This rule of law in Thompkins applies equally to a matter tried before the bench or a jury. State v. Fisher, 6th Dist. No. L-02-1041, 2002-Ohio-7305, ¶ 7.
 {¶ 4} The following evidence was presented to the court as the trier of fact. The victim testified that he lived in the apartment next door to appellant. Shortly after appellant moved into his apartment, the victim introduced himself and allowed appellant to use the phone and let him come into his apartment for a drink. About a week later, appellant called the victim by a different name and the victim decided not to speak to appellant again. However, after that time, appellant began to threaten the victim. The victim believed that appellant had kicked in the door to the victim's apartment and broken the lock while the victim was away. Another time, appellant threw a patio brick through the victim's patio window. Appellant was outside holding a butcher knife and talking about what he was going to do to the victim. During the final *Page 3 
incident, the victim was in his bedroom in the early morning hours when he heard appellant pacing up and down outside and talking. The victim pulled his curtains shut and then heard knocking and beating on the wall of his living room that adjoined appellant's apartment. Appellant had beat on the victim's wall in the past, but this time appellant was using a can. Once a hole was made in the wall, appellant's hand came through the wall and he was making the opening larger. Appellant threatened that he was coming to get the victim. Eventually, appellant got his head partially through the hole. The only thing that kept appellant from getting in was a cross brace. On cross-examination the victim testified that appellant never came into his apartment. The victim denied ever having threatened appellant or doing anything to aggravate him.
 {¶ 5} An officer called to the scene of the final incident testified that he had been to appellant's apartment numerous times because of complaints of noise caused by appellant. By the time the officer arrived, the problems had always subsided. On the morning of the wall incident, the officers arrived and went to appellant's patio. They saw appellant yelling and screaming and acting very irate. The officers determined quickly that appellant would have to be taken to Rescue Mental Health. The nearly 16-inch hole appellant had created in the wall was large enough for a man's arm and shoulder or head to go through. Appellant admitted to the officers that he had thrown a can of olives through the wall. The detective who investigated the crime testified that the victim had said that appellant's head, shoulders, and arm had come through the hole in the wall. *Page 4 
 {¶ 6} Appellant testified that the victim had continuously threatened him and called him names and even falsely accused him of actions for which he was sent to Rescue Mental Health. Several times the police came to his apartment and the victim had come over in their presence and called appellant names. The night of the wall incident, appellant had thrown the can against the wall several times because he was angry at the victim for calling appellant names earlier in the evening, for turning the neighbors against him, and for playing loud music. Appellant denied ever putting any part of his body through the wall. He further testified that after he made the hole in the wall, he went outside to get a brick, which he threw at the wall. Then, he went outside again to the victim's patio to talk to him. He testified that the photograph admitted into evidence was a picture of the wall after repairs had been started and that was why the hole was so large.
 {¶ 7} R.C. 2911.12(A)(4) provides that "(A) No person, by force, stealth, or deception, shall do any of the following: * * * (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 8} Appellant argues that the victim's testimony was contradictory. We disagree. A full reading of the transcript clarifies the victim's testimony. While he did testify that appellant threatened to and did attempt to come into his apartment through the hole, he never did fully enter the apartment. Appellant's testimony that he never put his arm or head through the hole is in direct conflict with the victim's testimony. The court, as the trier of fact, resolved the conflict in the evidence by determining the credibility of the parties. The court clearly did not lose its *Page 5 
way in resolving this conflict. Therefore, we find that appellant's conviction was not contrary to the manifest weight of the evidence. Appellant's sole assignment of error is not well-taken.
 {¶ 9} Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J. concur. *Page 1